UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CR 49 CDP |
| | ) | |
| MEDIHA MEDY SALKICEVIC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER REGARDING RECONSIDERATION OF DETENTION**

Defendant Mediha Medy Salkicevic has moved (Doc. 460) for reconsideration of the Detention Order issued on April 17, 2015. (Doc. 145). A hearing was held on October 23, 2018. Detention hearings were originally held on March 11 and 23, 2015.

Defendant Salkicevic is charged by indictment with 2 counts of violating 18 U.S.C. § 2339A (Counts 1 and 3). The Detention Order describes more specifically the allegations against defendant:

> Specifically, the indictment alleges defendant Salkicevic contributed her personal money and collected money from others to support Abdullah Ramo Pazara and others who were fighting in Syria, Iraq, and elsewhere and who were conspiring to murder and maim others; used digital internet media to communicate with others, using coded language and aliases, about the actual fighting and killing outside the United States by persons who were supported by the money she contributed; transferred $1,500.00 to a co-defendant's financial account between August 10 and 12, 2013; transferred $1,200.00 to the co-defendant's account between October 6 and 10, 2013; and transferred $1,062 to this account on January 4, 2014. The indictment also alleges that on October 19, 2013 co-defendant Hodzic and Salkicevic communicated with each other about the use to which two long sniper rifle scopes could be put.

(Doc. 145 at 1-2).

2015 Detention Order

In the April 2015 determination that defendant Salkicevic must be detained, the Court made the following findings:

The parties have not made any substantial objection to the statements of fact set forth in the written reports of the Pretrial Services Offices in the Northern District of Illinois, where defendant was arrested, or in this district. (Doc. 55.) Therefore, the court hereby adopts and incorporates by reference into this Detention Order the facts set forth in those reports.  Also before the court are Government Exhibits 1 through 10, and 2a through 9a.

From the record described above, especially the pretrial services reports, the court finds that defendant Mediha Medy Salkicevic is 34 years of age.  She was born in Bosnia and came to the United States in 1999.  She is a naturalized American citizen.  She traveled to Bosnia in 2014; her U.S. passport was confiscated by the arresting agents.  Her father is deceased; her mother resides in Bosnia.  Of her four living siblings, three live in Bosnia and a sister in Illinois.  She has been married twice and has borne two children during each marriage.   She, her current husband, a legal U.S. resident, and all four minor children live in northern Illinois.  Defendant has no criminal record.

Defendant's husband told the pretrial services officer that he would be a surety on an appearance bond and defendant's third-party custodian.  However, their financial circumstances are modest; both he and defendant work different shifts to be sure the children are cared for; and they personally do not have substantial money to secure a high bond amount.   Defendant advised that her sister in northern Illinois helps care for their children.

Defendant reported she traveled to Bosnia in 2001, 2004, 2009, and 2014.  Her husband also reported that defendant is building a house in Bosnia; it is currently under construction on land currently valued at a substantial amount, free and clear of debt.   She has plans to return to Bosnia to raise her children.

Defendant herself assured the pretrial services officer in this district that she had friends who would post property to secure her release; her husband advised he was unaware of whom she referred.  During the detention hearing, defendant proffered that a named individual in New York had debt free real property valued at $105,000.00, and another named person in Chicago had debt free real property valued at $114,000.00, both of whom would use the respective properties to secure defendant's release.  Defendant has medical conditions for which she takes medication.

During the detention hearing substantial evidence was received that defendant has used two alias names in frequent internet communications with several people, including at least one co-defendant, indicating her very strong support for the armed and violent killing by others outside the United States alleged in the indictment.  When she and two of her children were arrested on February 6,

2

>   2015 in Chicago on the instant indictment, during a traffic stop, defendant stated they were en route to getting their passports renewed so they could travel to Bosnia.

(Doc. 145 at 3-4).   Further,

>   Relevant to whether defendant would be a danger to the community are her prior criminal history, the nature of the offenses charged in the indictment, the nature and strength of the government's evidence, and other indicia of dangerousness.  The record before this court indicates that defendant has no criminal record.  Yet, the nature of the charges against her are very serious and Congress considers them so.  They involve great violence for which she frequently used the internet to show her support.  The grand jury in this district found probable cause to believe defendant transferred a total of $3,762.00 during late 2013 and early 2014, when she and her husband and children were living in modest circumstances, while she traveled to Bosnia several times, including 2014, and while she was constructing a home in Bosnia.
>
>   Defendant presents a substantial risk for flight.  She has used several alias names, has ties outside the United States, is building a home outside the United States, and was planning to leave the United States when she was arrested. Further, the potential penalties of imprisonment upon conviction in this case are a strong incentive for flight.

(*Id.* at 5).

## Motion for Reconsideration of Detention

The Bail Reform Act of 1984 provides the applicable standard for reconsidering a detention order:

>   The [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2).   The motion for reconsideration of the detention order is in accord.   (Doc. 460 at 2) (citing *United States v. Petters*, 2009 WL 205188 at *2 (S.D. Minn.) (quoting *United States v. Archambault*, 240 F. Supp.2d 1082, 1084 (D.S.D. 2002)).

3

Assertedly Changed Circumstances

Defendant Salkicevic argues that since the beginning of her detention relevant circumstances have changed that support pretrial release:  (1) She is a naturalized American citizen who has a residence in Chicago with her husband, who is a lawful permanent resident, and their 4 daughters, the youngest of whom is now 9 years of age.   (2)   Her spouse is willing to act as a third-party custodian.   (3)   She has been housed by the Marshals Service since February 2015 in the Ste. Genevieve County Jail, has had no violation, and has been an "exemplary" detainee.   (4) She would abide by any condition(s) of release ordered by the Court.   (5)   She has limited funds with which to secure an appearance bond.   (Doc. 460 at 6-7).

Regarding circumstance (1), only the increased age of defendant's youngest daughter is a changed circumstance.   All the other facts in (1) and circumstances (2) and (4) were accounted for in the original determination to detain defendant Salkicevic.

Regarding (3), the undersigned took the liberty to ask the Marshals Service to informally enquire of the Ste. Genevieve County Jail personnel about whether defendant Mediha Medy Salkicevic has been and remains an "exemplary" pretrial detainee, as it is argued.  The Marshals Service made the enquiry and reported informally to the Court that the jail personnel reported defendant has been a very cooperative detainee who has not caused any problem.

Also, the passage of time during defendant's extended detention is a changed circumstance that bears substantial consideration in other respects.  As stated above, the changed, but still young, age of defendant's youngest child is an important factor that weighs on the Court's determination to detain defendant.  While the Court found in the Detention Order that clear and convincing evidence establishes that no condition or combination of conditions of release would reasonably assure the Court that defendant will not flee and will not endanger the community, if released, Doc. 145 at 5-6, the passage of time may have changed the factual support for defendant's continued detention.   Her appearance in court and her not posing a danger to the community are cardinal factors under the Bail Reform Act in determining whether to release or to detain her.

From the current record, the statutory requirement for reconsideration of the detention order requires that the Court determine the current effect of the lengthy period of pretrial detention

4

on the Bail Reform Act's standards for pretrial detention. For this reason, the Court will order a supplemental bail report and set a hearing for its consideration.

### Due Process

Defendant also argues that the substantial length of her pretrial detention[1] under the Bail Reform Act has become punitive, in violation of the Fifth Amendment's Due Process Clause, citing *Bell v. Wolfish*, 441 U.S. 520, 535, 538 (1979). The Supreme Court has not given a "bright line limit" for when the length of pretrial detention under the Bail Reform Act moves from appropriately "regulatory" (by preventing danger to the community and assuring defendant's presence in court when required) to "excessively prolonged" and thus unconstitutionally punitive; rather, this determination must be made on a case-by-case basis. *United States v. Salerno*, 481 U.S. 739, 747 n. 4 (1987); *United States v. Rush*, 2017 WL 6541436 at *3 (E.D. Mo. Dec. 1, 2017) (Mensah, M. J., Report and Recommendation), *adopted*, *United States v. Rush*, 2017 WL 6550680 (E.D. Mo. Dec. 21, 2017).

A factor that relates to whether the length of pretrial detention remains regulatory is whether it is within "the stringent time limitations of the Speedy Trial Act." *Salerno*, 481 U. S. at 747. It cannot be gainsaid that this case is a complex case and for this reason qualifies for the exclusion of periods of delay, because to comply with the 70-day trial setting requirement of 18 U.S.C. § 3161(c)(1) would be to unreasonably "expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii). Defendant has never objected to this case being considered complex and entitled to the exclusion of the Speedy Trial Act default deadlines. This is due to many factors, including the nature of the offenses charged in the indictment, the amount and complexity of the evidence and information disclosure of which the defendants have a right under the Constitution, and the nature of the pretrial motions which the defendants, including defendant Salkicevic, filed and were heard on. Upon this foundation and such findings, the Court very early in the case

---

[1] Defendant Mediha Medy Salkicevic has been in the custody of the United States Marshals Service continuously since her arrest on February 6, 2015, in the Northern District of Illinois for this case.

5

determined for defendant Salkicevic that this case was complex and entitled to the exclusion of periods of time required by the parties for pretrial preparation.  (Doc. 67, filed March 10, 2015); *see also* Docs. 35 for defendants Ramiz Zijad Hodzic and Sedina Unkic Hodzic, 78 for defendant Mediha Medy Salkicevic, 113 for defendant Jazminka Ramic, and 135 for defendant Armin Harcevic.  A review of the record since these complexity findings were made shows that the case remains complex for a variety of reasons and that no defendant has demanded that a trial date be set, although defense counsel have on several occasions reminded the Court about the length of defendants' pretrial detention.

Another factor regarding whether the length of pretrial detention makes the pretrial detention punitive is the extent to which the government's interest in community safety outweighs an individual defendant's liberty interest.  *Salerno*, 481 U. S. at 748-49.  In *Salerno*, the Supreme Court considered the facial constitutionality of the Bail Reform Act.  The Court determined that pretrial detention to protect the community, when proven by clear and convincing evidence under the Bail Reform Act, is a constitutionally sufficient reason for pretrial detention.  *Salerno*, 481 U. S. at 750-51.  The application of *Salerno* to defendant Salkicevic's case is very limited because the length of pretrial detention was not a relevant factor in *Salerno*.

More relevant to the due process constitutionality of lengthy pretrial detention are:  (a) the facts that led to the defendant's original pretrial detention and the strength of the government's evidence on these facts, including any statutory presumption for detention; (b) the past and non-speculative future lengths of pretrial detention; (c) the extent of the government's or the defendant's responsibility for the length of pretrial detention; and (d) the gravity of the pending charges.[2]  *United States v. Hare*, 873 F.3d 796, 801 (5th Cir. 1989); *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012); *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988); *United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986); *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986);  *United States v. Rush*, 2017 WL 6541436 at *3; *United States v. Omar*, 157 F. Supp.3d 707, 715 (M.D. Tenn. 2017); *Archambault*, 240 F. Supp. 2d at 1085).

---

[2] The Court directed counsel for the parties to provide it a reasonable estimate of the Sentencing Guidelines range upon a finding of guilt.  The government responded that for Counts 1 and 3 this defendant might be sentenced to imprisonment for 360 months to life.  (Doc. 472 at 2).

(a)  Reasons for the original detention order

The evidence, findings, and conclusions that led to defendant Salkicevic's original pretrial detention are set out above.   They include defendant's strong intention to relocate to her residence to Bosnia, the government's showing that its evidence was strong, and the potential for substantial punishment upon conviction.  The strength of the government's evidence against defendant, including any statutory presumption for detention, remains strong and has not diminished over time.

(b)  Past and non-speculative future lengths of pretrial detention

Defendant argues that the length of time she has been detained in custody weighs heavily in favor of release even if upon restrictive conditions of release, such as home incarceration and electronic monitoring.  As of this writing, although this defendant has a March 21, 2019 hearing setting before the District Judge, there is no trial setting, and currently the length of further pretrial detention, if the case is not otherwise determined, can only be speculative.

(c)  Extent of the government's or the defendant's responsibility
for the length of her pretrial detention

Other than the very substantial size of the government pretrial disclosure of information and evidence and the need for translating very much of it into English from the Bosnian language, which the defendants speak, defendant has pointed to no substantial responsibility of the government for the length of pretrial proceedings and the defendant's concomitant pretrial detention.  In fact, all parties filed motions for extensions of time to consider pretrial matters. Defendant Salkicevic attributes the length of pretrial development of the case to the magnitude of the pretrial discovery that has been provided by the government.  Defendants also note that there is no trial date set, and the government has indicated that it could disclose more information to the defendants.

In response, the government points out that on several occasions the Court declared that this was a complex case.   The purposes of this determination were to advise the parties about the

7

likely length of pretrial preparation and litigation and to take advantage of the statutory exceptions built into the Speedy Trial Act, for the benefit of both the prosecution and the defense.  If the parties were required by this Act to prepare for a very prompt trial setting, neither the prosecution nor the defense would have had sufficient time to prepare and the interests of justice would have been jeopardized.

The Court has held regular status conferences to assure itself that the government was promptly and appropriately disclosing information and evidence to the defense and that the defendants were processing this information with interpreters of their own choosing in a manner that safeguards defendants' interests.

The record also indicates that the government sought hearings pursuant to *Frye v. Missouri*, 132 S. Ct. 1399 (2012), and the Court set hearings for March 2017.  However, before the *Frye* hearings were held, the prosecution and the defense entered further negotiations and discussions regarding those hearings and any potential superseding indictment.  The parties did not press for the *Frye* hearings, the government delayed seeking a superseding indictment, and the defendants pursued the issue of lawful combatant immunity.  That issue was heard and determined by the Court.

None of the grants of additional time, whether for the government or the defendants, were unreasonably sought and granted.   Throughout the lengthy pretrial period, the Court has observed that counsel for the government and counsel for the defendants have cooperated in the pretrial preparation and litigation.

Also relevant is the fact that at different times defendant Salkicevic experienced the need for new counsel.  To the credit of the newly added defense counsel and counsel for the government, the Court has not observed a slowing of the pretrial preparation occasioned by new defense counsel being brought into the case mid-litigation.

 In sum, the Court finds and concludes that the length of the pretrial period, although lengthy, has not been unreasonable and an adverse consideration for the delay cannot be attributed to the government or to the defense.

8

      (d)   The gravity of the pending charges

There is no dispute that the charges against defendant in the current indictment are very serious. The statutory maximum sentences potentially carry substantial terms of incarceration.

For all of the reasons, the continued and lengthy pretrial detention of defendant Mediha Medy Salkicevic does not violate due process.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Pretrial Services Office conduct a supplemental investigation on whether defendant Mediha Medy Salkicevic ought to be detained or continued in detention. This investigation should include whether there are American citizen sureties for an appropriate appearance bond and whether a suitable home plan for defendant's residence in this district or elsewhere can be established. Following the receipt of this report, a supplemental hearing will be set.


                                                               **/S/     David D. Noce**
                                                               **UNITED STATES MAGISTRATE JUDGE**

Signed on March 8, 2019.